# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 92 C 5354 | DATE | JUNE 21, 2001 |
| CASE TITLE | UNITED STATES OF AMERICA v. ROBERT R. KRILICH, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]
Defendants' Motion to Vacate the Consent Decree [141-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 2 | Document Number |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JUN 22 2001 | | |
| | Docketing to mail notices. | | date docketed | | 154 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | June 21, 2001 | |
| | | | E D - 7 FILED FOR DOCKETING 01 JUN 21 PH 5: 37 | date mailed notice | |
| CW | courtroom deputy's initials | | | MQM | |
| | | | Date/time received in central Clerk's Office | mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

JUN 2 2 2001

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
      v.                        )       No. 92 C 5354
                                )
ROBERT R. KRILICH, et al.,      )
                                )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

In 1992, the parties to this case entered into a consent
decree regarding Clean Water Act ("CWA") violations involving
wetlands in an area being developed by defendants.[1]  Following
consideration by the court, the proposed decree, as modified, was
entered on October 29, 1992 (the "Decree").  The United States
subsequently contended that defendants had violated certain
provisions of the Decree concerning the Royce Renaissance
Property (the "Royce Property").[2]  The issue was presented on
stipulated and asserted facts and briefed by the parties.  It was

---

[1]For present purposes, it is unnecessary to make any
distinction among the defendants.

[2]The present dispute, as well as the prior disputes that
resulted in court rulings, all concern the Royce Property.  The
existing dispute does not directly concern the Sullivan Lake
Property that was also a subject of the Decree.

154

held that none of the facts claimed to be in dispute were material and a ruling was issued on the basis of the documents that had been presented. Defendants were held to have violated deadlines for a mitigation plan that were contained in the Decree and therefore were subject to a substantial penalty under the terms of the Decree. See United v. Krilich, 948 F. Supp. 719 (N.D. Ill. 1996) ("Krilich I"). In an opinion dated October 15, 1997, this holding was upheld on appeal, except that the government conceded that there had been a miscalculation of the penalty. See United States v. Krilich, 126 F.3d 1035 (7th Cir. 1997) ("Krilich II"). On December 15, 1997, a modified judgment in the amount of $1,257,500 was entered on the docket.

In November 1998, defendants moved to bar enforcement of the penalty. That motion was construed as being pursuant to Fed. R. Civ. P. 60(b). See United States v. Krilich, 1999 WL 182333 *1 (N.D. Ill. March 25, 1999) ("Krilich III"). The primary argument raised by defendants was that this court lacked jurisdiction to enforce the mitigation plan deadlines. Defendants contended that subject matter jurisdiction was lacking because the Royce Property wetlands that allegedly were improperly filled were not "navigable waters"[3] covered by the CWA

---

[3]The CWA regulates the discharge of dredged or fill material into "navigable waters." 33 U.S.C. § 1344(a). The CWA defines navigable waters as "the waters of the United States, including the territorial seas." Id. § 1362(7). The Army Corps of Engineers and the Environmental Protection Agency, both of which enforce the CWA, have promulgated regulations defining

nor did they have a sufficient connection with interstate
commerce to invoke federal jurisdiction. It was assumed that
these issues went to the court's subject matter jurisdiction, but
Rule 60(b)(4) relief was denied on the ground that the judgment
was not void for lack of subject matter jurisdiction because,
even if jurisdictional, a colorable basis existed for finding the
wetlands to be navigable waters and within the federal
government's interstate commerce powers. Id. at *2. Defendants
also contended that the penalty should not be enforced because
the Decree should be modified in light of a more recent precedent
from another circuit supporting that the filled lands did not
fall within the purview of the CWA. The merits of this Rule
60(b)(5) contention were not addressed because defendants only
sought retrospective relief (vacating the prior monetary
judgment), whereas modifying the Decree in 1999 could only affect
possible prospective relief. Id. at *3.

Defendants appealed Krilich III, raising only the Rule
60(b)(4) contentions discussed above. The Seventh Circuit held
that the questions of whether the wetlands at issue were
navigable waters or had a sufficient nexus to interstate commerce
did not go to the court's subject matter jurisdiction. United
States v. Krilich, 209 F.3d 968, 971-72 (7th Cir. 2000)
("Krilich IV"). The court further stated: "Moreover, just as a

waters of the United States. See 33 C.F.R. § 328.3(a); 40 C.F.R.
§ 230.3(s).

guilty plea (in which the criminal defendant admits—at least implicitly—the connection between his conduct and interstate commerce) forecloses an appellate attack on subject matter jurisdiction, [defendants] cannot now assail the district court's subject matter jurisdiction because [they] entered into a consent decree in which [they] agreed that the waters involved were 'waters of the United States.'" Id. at 972. The Seventh Circuit concluded: "In sum, the district court had subject matter jurisdiction over the EPA's case against [defendants] because the suit civilly charged a violation of a federal statute which is within the federal courts' federal question jurisdiction. And [defendants'] attempt to now assail the court's subject matter jurisdiction fails because [they] entered into a consent decree stipulating that the waters involved were 'waters of the United States,' and that is merely an element of the offense and not the basis for federal subject matter jurisdiction." Id. at 973. On November 13, 2000, the Supreme Court denied certiorari. Krilich v. United States, 121 S. Ct. 482 (2000).

On January 9, 2001, the Supreme Court issued Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers, 121 S. Ct. 675 (2001) ("SWANCC"). In that case, the Supreme Court held that the Army Corps' "Migratory Bird Rule" was unenforceable because it exceeded the authority granted to the

Corps under the CWA.  Id. at 684.[4]  Under the Migratory Bird
Rule, waters of the United States were defined as including
isolated wetlands which are or could be used by migratory birds
or endangered species.  See id. at 678.  SWANCC holds that the
CWA definition of navigable waters/waters of the United States
does not extend to the full limits of Congress's powers under the
Commerce Clause.  Id. at 683-84.  SWANCC does not reach the
question of whether, on a basis other than being visited by
migratory birds, isolated wetlands may fall under the definition
of navigable waters/waters of the United States.  United
States v. Interstate General Co., ___ F. Supp. 2d ___, 2001 WL
668164 *3 (D. Md. June 12, 2001).  It makes clear that it is
still the rule that a nonnavigable (in the traditional sense)
wetland directly adjacent to a navigable body of water falls
within the purview of the CWA, SWANCC, 121 S. Ct. at 682-83
(citing United States v. Riverside Bayview Homes, Inc., 474 U.S.
121 (1985)), and that an isolated wetland being visited by
migratory birds is not enough to bring the wetland within the
purview of the CWA.  SWANCC does not clarify at what points
between those two extremes a nonnavigable body of water falls
within the CWA definition of navigable waters.  SWANCC does
indicate, though, that wetlands likely need to have a substantial
connection to interstate commerce or a connection to navigable

---

[4]The majority of circuits, including the Seventh Circuit
in SWANCC, had held otherwise.

waters (in the traditional sense) in order to be waters of the United States that fall within the CWA term navigable waters. See id. at 682-83.[5]

In February 2001, defendants brought their present motion arguing that the Decree, at least as regards the Royce Property, should be vacated in light of SWANCC, which defendants contend makes clear that none of the waters on the Royce Property were navigable waters subject to regulation under the CWA. They contend that, because the waters do not fall within the purview of the CWA, the United States had no authority to regulate the waters and thus no authority to enter into a consent decree, making the Decree an ultra vires act. According to defendants, under this theory, the Decree is void ab initio and should be rescinded, which would include refunding the penalties already paid and compensating defendants for the expense of the required Royce Property mitigation work. Defendants contend the Decree may be vacated or modified either under the express reservation-of-jurisdiction clause of the Decree or pursuant to the court's inherent powers to modify its judgments. Alternatively, defendants contend that, pursuant to Rule 60(b)(5), the Decree should be modified in light of the change of law. Defendants

_____

[5]No final or proposed regulation has been found which revises the regulatory definitions in light of SWANCC. Possible revisions, however, apparently are presently being considered. See Further Revisions to the Clean Water Act Regulatory Definition of "Discharge of Dredged Material," 66 Fed. Reg. 4550, 4569 (Jan. 17, 2001).

because its use of the property continues to be affected by the Decree and because the payment for the penalties is presently being held by the court and has not yet been turned over to the government.[6]

At the time defendants presented their motion, the court advised the parties that there were certain issues they should make sure to address. The government was advised that it would not be required to provide evidentiary proof along with its answer to the motion, but it was expected that the government would at least outline its factual basis for contending the waters on the property still fall within the purview of the CWA, even in light of <u>SWANCC</u>. The government apparently misunderstood. The government contends that, even in light of SWANCC, the pertinent Royce Property waters still fall within the purview of SWANCC. The government's apparent position is that the wetlands at issue are not isolated. In any event, for present purposes, it will be assumed that the waters at issue actually are nonnavigable, isolated wetlands that have no surface connection to the nearest stream or nearest navigable body of

---

[6]Under the terms of the Decree, it was to "terminate on August 31, 1998 if all of the on-site and off-site mitigation and enhancement projects meet the final performance standards set forth in the pertinent exhibits for those projects. If the final performance standards are not met on that date, then this Decree will continue in effect until the standards are met." Decree ¶ 86. Apparently, the standards have not yet been met, at least as regards the Royce Property.

water.[7]  If it is held that, under that factual assumption,
defendants would be entitled to modification of the Decree or
other relief, further proceedings would be necessary to resolve
any genuine and material factual disputes regarding the nature of
the wetlands.

The Decree contains the following provisions that are
particularly pertinent to the present dispute:

> 2.   The Court shall retain jurisdiction in
> order to enable any party to apply to the Court
> at any time for such further relief as may be
> necessary to interpret, enforce, or modify this
> Decree.
>
> * * *
>
> 10.   Except as specifically modified herein,
> the terms "waters of the United States"; . . .
> shall have the meanings assigned them at 40
> C.F.R. § 230.3 or 33 C.F.R. § 323.2. . . .
>
> * * *

### V.   <u>WATERS OF THE UNITED STATES</u>

> 17.   For purposes of this Consent Decree,
> the parties shall treat wetland and open water
> areas depicted on Exhibit 1, together with the
> new wetland and open water area created pursuant
> to Part VII (injunctive relief) and depicted on

---

[7]Defendants represent that all the bodies of water at
issue are located 1.5 to 2 linear miles from nonnavigable Salt
Creek and 7 to 7.5 linear miles from the nearest navigable body
of water, the Des Plaines River.  In their reply, defendants
further represent that Salt Creek is 1.9 or more stream miles
from each body of water and that the Des Plaines River is 19.1 or
more stream miles from each body of water.  According to the
report of defendants' expert, all of the Royce Property's
drainage "appears" to flow into a manhole that "appears" to
connect to an underground storm sewage system which runs for 2000
feet before flowing into a small ditch that goes for 1.5 miles
before joining Salt Creek.  Schaefer Report ¶¶ 22-24.  The expert
states that this manhole has existed since at least 1986.

Exhibit 2, as waters of the United States located on the Royce Renaissance Property.

* * *

19. The Defendants hereby elect delineation for the Royce Renaissance Property pursuant to the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989). Further, the Parties agree that the boundaries of the alleged waters of the United States referenced in Paragraph 17 and depicted on Exhibit 1 would not differ if the delineation had been conducted pursuant to the Corps of Engineers Wetland Delineation Manual (1987).

20. The boundaries depicted in Exhibits 1 and 3[8] shall bind the parties for the life of this Consent Decree unless and until a new Corps or EPA delineation is made pursuant to the final version of a revised wetland delineation manual. The Defendants shall not request a new jurisdictional determination from either the Corps or EPA for the Royce Renaissance Property or the Sullivan Lake Property during the life of this Consent Decree unless and until the government issues the final version of a revised wetland delineation manual.

20A. The Defendants shall continue to treat wetland and open water areas depicted on Exhibit 1 as waters of the United States until the mandate issues in Hoffman Homes, Inc. v. EPA, No. 90-3810 (7th Cir. April 20, 1992) and until proceedings related to any appeal, petition for certiorari, or remand are completed. Following completion of these proceedings, unless pertinent portions of the Seventh Circuit's April 20, 1992 decision are reversed, Exhibit 1 areas W2A, W2B, W3, W5B, and W9 shall be excluded from the obligations imposed in Paragraph 17.

Courts have always had the inherent power to reconsider or modify their judgments within a reasonable period of time.

---

[8]Exhibit 3 pertains to the Sullivan Lake Property.

See In re Met-L-Wood Corp., 861 F.2d 1012, 1018 (7th Cir. 1988),
cert. denied, 490 U.S. 1006 (1989). That power, however, has
been merged into Rule 60 of the Federal Rules of Civil procedure.
There are no separate inherent powers that are more expansive
than those provided for in Rule 60(b). See id.; In re
Wyciskalla, 156 B.R. 579, 580 (Bankr. S.D. Ill. 1993); Blair v.
Delta Air Lines, Inc., 344 F. Supp. 367, 368 (S.D. Fla. 1972),
aff'd, 477 F.2d 564 (5th Cir. 1973) (adopting district court
opinion); Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,
Federal Practice & Procedure §§ 2851-52 (2d ed. 1995). See also
Glass, Molders, Pottery, Plastics & Allied Workers International
Union, AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co., 56 F.3d
844, 847 (7th Cir. 1995). Additionally, pursuant to Rule 60(b),
this court would have the power to modify the Decree even without
the express provision contained in ¶ 2 of the Decree. See
Picon v. Morris, 933 F.2d 660, 662 (8th Cir. 1991). The language
of ¶ 2 does not provide any additional or greater powers of
modification that this court did not already have under Rule
60(b).[9] Defendants' present motion must be considered as a Rule

---

[9]Paragraph 2 states that motions to modify the Decree
may be brought "at any time." Arguably, that provision could be
construed as permitting Rule 60(b) motions to be brought at any
time. However, no order of the court can extend the time
limits contained in Rule 60(b). See Fed. R. Civ. P. 6(b);
United States v. Deutsch, 981 F.2d 299, 302 (7th Cir. 1992).
Paragraph 2 should not be construed as having an effect that is
inconsistent with the governing law. Even if it were to be so

60(b) motion. The arguments as to the judgment being void as an
ultra vires agreement will be considered under various
subsections of Rule 60(b) and the argument as to modification in
light of a change of law will be considered as a Rule 60(b)(5)
motion.

Defendants contend the Decree is a contract and that it
should be treated as such in ruling on the pending motion. It is
true that, "[f]rom the standpoint of interpretation, a consent
decree is a contract." Cook v. City of Chicago, 192 F.3d 693,
695 (7th Cir. 1999). A consent decree, however, is contractual
in nature in only "some respects." Rufo v. Inmates of Suffolk
County Jail, 502 U.S. 367, 378 (1992). "[I]t is an agreement
that the parties desire and expect will be reflected in, and be
enforceable as, a judicial decree that is subject to the rules
generally applicable to other judgments and decrees." Id.
"[F]rom the standpoint of remedy it is an equitable decree,"
subject to equitable remedies. Cook, 192 F.3d at 695.

The government does not dispute defendants' contention
that, where the requisite consent is lacking, a contract is void
ab initio. However, it is not a mere contract that is before
this court, it is a consent decree that has been entered as a
judgment. If the judgment is void, Rule 60(b)(4) provides that

_____

construed, it would have no effect because Rule 6(b) provides
that no court order can extend the time limits of Rule 60(b).

the judgment is to be vacated. The parties' contract being void is not the same as the judgment itself being void. A judgment is void if it is without subject matter jurisdiction, there was no personal jurisdiction over a party, or the judgment was entered without due process of law. Federal Election Commission v. Al Salvi for Senate Committee, 205 F.3d 1015, 1019 (7th Cir. 2000); Wright, Miller, & Kane § 2862 at 326-69; United States v. Beebe, 180 U.S. 343, 350-51 (1901). The fact that a party to a consent judgment lacked authority to consent (as defendants contend is true of the United States in light of SWANCC) does not void the judgment itself. Beebe, 180 U.S. at 350-51 (judgment not void where district attorney lacked authority to compromise absent express approval of Solicitor of the Treasury); Phelan v. Bradbury Building Corp., 7 F.R.D. 429, 432 (S.D.N.Y. 1947) (judgment not void even if parties lacked authority to settle because, subsequent to entry of judgment based on settlement of FLSA overtime claim, Supreme Court held that statute prohibited settlement of such claims for less than full damages). Contra National Revenue Corp. v. Violet, 807 F.2d 285, 288 (1st Cir. 1986) (consent decree void under Rule 60(b)(4) because Rhode Island Attorney General did not have authority to stipulate state statute violated the federal Constitution).[10] As was previously

---

[10]This holding in Violet is inconsistent with the Supreme Court holding in Beebe and the well-established case law as to

held in this litigation, defendants' contentions as to the wetlands not being United States waters and there being an insufficient interstate commerce nexus do not go to the court's subject matter jurisdiction and therefore do not state a basis for voiding the judgment pursuant to Rule 60(b)(4). _Krilich IV_, 209 F.3d at 971-72;[11] _Interstate General_, ___ F. Supp. 2d at ___, 2001 WL 668164 at *5. Even assuming that, in light of _SWANCC_, none of the wetlands that are a subject of the Decree are actually waters of the United States subject to regulation under the CWA, no basis is stated for vacating the Decree as void pursuant to Rule 60(b)(4). _Interstate General_, ___ F. Supp. 2d at ___, 2001 WL 668164 at *5; _cf._ _Phelan_, 7 F.R.D. at 432.

Though not stating a basis for relief pursuant to Rule 60(b)(4), the government's alleged lack of authority to enter into the Decree may state a basis for relief under another subsection of Rule 60(b). Before the existence of Rule 60(b), the Supreme Court held in _Beebe_ that an attorney's lack of authority could state a basis for vacating a judgment even if

---

the limited grounds for finding a judgment to be void under Rule 60(b)(4).

[11]The Seventh Circuit considered whether the wetlands not being waters of the United States or not having a sufficient nexus to interstate commerce went to this court's subject matter jurisdiction and held that it did not. At that time, defendants did not explicitly argue that the government engaged in an _ultra vires_ act by consenting to the Decree.

that basis was not that the judgment itself was void.  See Beebe,
180 U.S. at 351-53.  Such grounds, though, must be timely raised
and are subject to the possibility that the principal ratified
the attorney's action either expressly or through conduct.  See
id.  Modern cases denominate a motion to vacate based on an
attorney lacking authority to enter into a settlement agreement
as a Rule 60(b)(1) motion based on mistake or inadvertence.  See
Bradford Exchange v. Trein's Exchange, 600 F.2d 99, 102 (7th Cir.
1979).  A Rule 60(b)(1) motion must be brought within one year of
the entry of judgment.  Of course, defendants are not contending
that the government's attorneys lacked authority from their
principal as in Beebe and Bradford Exchange, but they are
contending that the parties were mistaken as to the government's
authority to regulate the wetlands at issue.  Defendants' ultra
vires contentions, therefore, may properly be classified as being
a claim of mistake of law under Rule 60(b)(1).  Cf. Webb v.
James, 147 F.3d 617, 622 (7th Cir. 1998).  Since it is more than
a year since the entry of judgment, the motion is untimely when
classified as a Rule 60(b)(1) motion.

But even assuming the ultra vires contention instead
falls within the catch-all provision of Rule 60(b)(6)[12] and was

---

[12]Rule 60(b)(6) provides for relief based on "any other
reason justifying relief from the operation of the judgment."
Such relief, however, is limited to circumstances that are not
otherwise covered by the other subsections of Rule 60(b).  See

brought within a reasonable period of time, it would fail on its merits. In the Decree, the parties agreed that the pertinent Royce Property wetlands currently at issue were waters of the United States. Defendants are bound by that stipulation. See Krilich IV, 209 F.3d at 972. Compare also Hugi v. United States, 164 F.3d 378, 380-81 (7th Cir. 1999). That these facts go to the federal government's authority to regulate the wetlands does not prevent defendants from being bound by the stipulations. See, e.g., Krilich IV, supra; Hugi, supra; Interstate General, ___ F. Supp. 2d at ___, 2001 WL 668164 at *5. Moreover, this is a post-judgment attack on the government's authority that comes more than eight years after entry into the Decree. Just as a colorable basis for subject matter jurisdiction is enough to defeat an attack on a judgment being void for subject-matter jurisdiction, see Krilich III, 1999 WL 182333 at *1-2, a colorable basis for the wetlands being subject to CWA regulation should be enough to defeat the present ultra vires contention. At the time the parties entered into the Decree, a colorable basis existed for finding the wetlands subject to CWA regulation.[13] See id. at *2.

---

Webb, 147 F.3d at 622; Helm v. Resolution Trust Corp., 84 F.3d 874, 878-79 (7th Cir. 1996); Met-L-Wood, 861 F.2d at 1018.

[13]To the extent there is a basis for the government to contend that the wetlands are not isolated, a colorable basis for CWA regulation continues to exist. Cases subsequent to SWANCC

But even if defendants are not bound by the stipulation, another ground still exists for denying relief on the <u>ultra vires</u> contention. There is no contention that the Sullivan Lake property does not contain wetlands subject to CWA regulation, even in light of <u>SWANCC</u>. Therefore, the government was not without authority to enter into the Decree. It would not matter that the Decree also has provisions imposing obligations as to wetlands that are not subject to CWA regulation. Under a consent decree, a party can agree to greater obligations than could be achieved if the suit were to go to trial. <u>Rufo</u>, 502 U.S. at 389; <u>Komyati v. Bayh</u>, 96 F.3d 955, 959 (7th Cir. 1996); <u>Kasper v. Board of Elections Commissioners of Chicago</u>, 814 F.2d 332, 342-43

---

have not limited the definition of waters of the United States to those immediately adjacent to navigable (in the traditional sense) waters. <u>See</u> <u>Headwaters, Inc. v. Talent Irrigation District</u>, 243 F.3d 526, 533 (9th Cir. 2001) (irrigation ditches that connect to streams that flow to navigable waters are waters of the United States); <u>Interstate General</u>, ___ F. Supp. 2d at ___, 2001 WL 668164 at *1, 3 (wetlands that are adjacent to nonnavigable creeks that connect to a navigable river via at least six miles of intermittent streams and drainage ditches are waters of the United States; <u>Idaho Rural Council v. Bosma</u>, ___ F. Supp. 2d ___, 2001 WL 668590 *1-2, *6 & n.4 (D. Idaho June 4, 2001) (spring that runs into pond that drains across a pasture into a canal that flows to a creek, that is either navigable or flows into a navigable river, is a water of the United States); <u>United States v. Buday</u>, 138 F. Supp. 2d 1282 (D. Mont. 2001) (wetlands adjacent a creek that flowed into a creek that flowed into a river that was navigable a further 190 miles downstream are waters of the United States); <u>Aiello v. Town of Brookhaven</u>, 136 F. Supp. 2d 81, 119 & n.30 (E.D.N.Y. 2001) (pond and creek that emptied into lake that flows into navigable bay are waters of the United States).

(7th Cir. 1987). A consent decree, however, cannot oblige a
party to perform illegal conduct. _Rufo_, _supra_; _Kasper_, _supra_.
It is not illegal to preserve isolated, nonregulated wetlands or
to create new wetlands to replace ones that have been destroyed.
The provisions of the Decree were lawful and based on a
substantive, colorable claim even if Sullivan Lake was the only
property that had wetlands subject to CWA regulation. Even
applying _SWANCC_ retrospectively and assuming the Royce Property
wetlands are not waters of the United States, the government was
not without authority to enter into the Decree.

In sum, the _ultra vires_ argument fails for four different
reasons, each of which is sufficient by itself to deny the
presently requested relief. First, even if the government went
beyond its authority, that does not void the judgment even if it
would void a contract. Second, defendants are bound by the
stipulation that the wetlands are waters of the United States.
Third, it is too late to now contend that the parties were
mistaken as to the wetlands being waters of the United States.
Fourth, the government's agreement to enter into the Decree was
not _ultra vires_ because the Sullivan Lake property contains
wetlands subject to CWA regulation.

Still to be considered is whether the Decree should be
modified in light of the change of law represented by _SWANCC_.
While the parties were negotiating, the Seventh Circuit decided

Hoffman Homes, Inc. v. Administrator, United States EPA, 961 F.2d 1310 (7th Cir. 1992) ("Hoffman I"). Hoffman I holds that "isolated wetlands" are not subject to CWA regulation. The government provides correspondence[14] showing that the parties were aware of Hoffman I and that, as a result, the decree in negotiation was modified to exclude specified wetlands that defendants contended were isolated. The parties also took into account the possibility that Hoffman I would be reversed. These provisions are incorporated in ¶ 20A of the Decree. After the case was filed, but before the Decree was approved and entered as a judgment, Hoffman I was vacated for rehearing. Almost nine months after the Decree was entered, the Seventh Circuit decided Hoffman Homes, Inc. v. Administrator, United States EPA, 999 F.2d 256 (7th Cir. 1993) ("Hoffman II"). Hoffman II holds that the wetlands at issue did not meet the regulatory definitions of waters of the United States and therefore found it unnecessary to consider whether an isolated wetland could qualify as a water of the United States.[15] Later in 1993, the Seventh Circuit issued

---

[14]This correspondence is being considered in determining whether the history of this case supports modification in light of a change of law. The correspondence is not being used to construe the meaning of the Decree and no opinion is expressed regarding whether it would have been appropriate to consider the correspondence as extrinsic evidence pertinent to interpreting ¶ 20A.

[15]Krilich I, 948 F. Supp. at 721-25, construes the meaning of ¶ 20A and rejected the government's contention that

an opinion supporting that isolated wetlands were properly subject to regulation under the CWA. See Rueth v. United States EPA, 13 F.3d 227, 231 (7th Cir. 1993).

In November 1998, defendants moved to vacate the penalties that had been imposed for violation of the Decree. See Krilich I; Krilich II. For the first time, defendants raised the contention that the Royce Property wetlands that were the subject of the Decree were not subject to CWA regulation because they were isolated wetlands. This court held that "[t]here was and continues to be a colorable basis for exercising jurisdiction over the Decree's subject matter and it cannot be held that jurisdiction in this case was totally wanting." Krilich III, 1999 WL 182333 at *2. Since defendants sought only retrospective relief (vacating a money judgment), the merits of modifying the Decree in light of a claimed change of law was not considered. See id. at *3.[16] The Seventh Circuit affirmed, holding that the issue did not go to this court's subject matter jurisdiction and therefore could not be a basis for vacating the judgment as void. See Krilich IV.

Hoffman II was a "reversal" of Hoffman I such that the isolated wetlands that had been expressly excluded from the Decree should be considered waters of the United States.

[16]The claimed change of law was a Fourth Circuit case holding that the Migratory Bird Rule exceeded the Army Corps' statutory authority under the CWA. See United States v. Wilson, 133 F.3d 251, 257 (4th Cir. 1997).

Between <u>Krilich III</u> and <u>Krilich IV</u>, the Seventh Circuit issued its opinion in <u>SWANCC</u>, which upheld the Migratory Bird Rule as constitutional and within the agencies' authority under the CWA. 191 F.3d 845 (7th Cir. 1999). That decision was reversed by the Supreme Court's decision in <u>SWANCC</u> holding that the Migratory Bird Rule exceeded the agencies' authority under the statute. Defendants contend the Decree should be modified in light of the Supreme Court's decision in <u>SWANCC</u>.

Rule 60(b)(5) provides in part that a judgment may be modified or vacated if "a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." Although defendants contend the prior clause is satisfied, that provision is clearly inapplicable to this case. That provision is limited to judgments that were the basis of issue or claim preclusion; it does not apply to reversals of cases that were relied upon as precedent. Wright, Miller, & Kane § 2863 at 335. Therefore, defendants only possible relief is prospective relief under the last clause. <u>Agostini v. Felton</u>, 521 U.S. 203, 239 (1997); <u>Krilich III</u>, 1999 WL 182333 at *3.

Under the last clause of Rule 60(b)(5), modification of a consent decree can only be appropriate if the parties based their agreement on a misunderstanding of the law. <u>Rufo</u>, 502 U.S.

at 390. At the time defendants originally agreed to the relevant portions of the Decree, Seventh Circuit case law (<u>Hoffman I</u>) held that isolated wetlands were not subject to CWA regulation. <u>SWANCC</u> did not narrow the application of the CWA any more than did <u>Hoffman I</u>. Paragraph 20A of the Decree was drafted in light of <u>Hoffman I</u>. When <u>Hoffman I</u> was vacated for rehearing prior to actual entry of the Decree, the Decree was not modified to take that into account. Therefore, the Decree, as it now stands, was drafted in light of controlling precedent that was no less favorable to defendants than <u>SWANCC</u>. It was not drafted in light of subsequent Seventh Circuit precedent that, unlike <u>Hoffman I</u>, was overruled by the Supreme Court's decision in <u>SWANNC</u>. Also, the Decree does not oblige defendants to perform any act that is now unlawful in light of current law. Equity does not require that the Decree be reopened so that defendants may now litigate whether the wetlands on the property are actually isolated. Defendants chose not to do so more than eight years ago and the legal framework has not changed in a manner that would justify doing it today. <u>Cf.</u> <u>Interstate General</u>, ___ F. Supp. 2d at ___, 2001 WL 668164 at *4-5.

For the foregoing reasons, defendants' motion to vacate the consent decree will be denied.

IT IS THEREFORE ORDERED that defendants' motion to vacate the consent decree [141-1] is denied.

ENTER:

_William T. Hart_

UNITED STATES DISTRICT JUDGE

DATED:    JUNE   21   , 2001